UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TYRELL BROUGHTON, | |
| Plaintiff, | 23-CV-6042 (LTS) |
| -against- | ORDER OF DISMISSAL |
| TRUIST BANK, | |
| Defendants. | |

LAURA TAYLOR SWAIN, Chief United States District Judge:

Plaintiff, who is proceeding *pro se* and *in forma pauperis* ("IFP"), filed this action invoking the Court's federal question jurisdiction and alleging that Defendant Truist Bank violated his rights. On January 23, 2024, the Court dismissed the complaint for failure to state a claim, finding that it did not comply with federal pleading rules, but granted Plaintiff leave to replead his claims in an amended complaint. Plaintiff filed an amended complaint on March 1, 2024, which the Court has reviewed. For the reasons set forth below, the Court dismisses this action.

## BACKGROUND

Plaintiff filed his original pleading against Truist Bank using the court's general complaint form. In response to the question on the form asking for the facts underlying this action, Plaintiff asserted that Defendant violated "multiple federal laws." (ECF 1 ¶ III.)[1] Plaintiff did not, however, provide any facts relating to these alleged violations of federal law, instead

---

[1] The Court quotes verbatim from the complaint. All spelling, grammar, and punctuation are as in the original unless noted otherwise.

attaching more than 60 pages of documents,[2] including: (1) a $30,000 retail installment contract between Plaintiff and Pepmore Auto Sales in Queens, New York, for a used 2018 vehicle; (2) a November 15, 2022 letter from Plaintiff to Truist Bank asking that it "cease and desist all contact and communication" regarding the "collection of an alleged debt and all related matters," and characterizing the Bank's communications to him as "Deceitful," "Threatening," "Causing emotional and physical duress," "Illegal," "Unlawful," and "Malpractice"; (3) a December 8, 2022 letter from Truist Bank stating that it "appreciate[d] the opportunity to respond" to Plaintiff's letter, noting that Plaintiff had taken out a $30,000 automobile loan on which $24,824.74 remained due, and that a lien would remain on the vehicle until the balance was paid; (4) an April 8, 2023 letter from Truist Bank stating that it had investigated the dispute and determined that the balance remained due; and (5) monthly statements from Truist Bank to Plaintiff showing the loan balance. (*Id.* at 8-11, 24-26, 33-34, 41-47.)

Plaintiff also attached to the complaint "Affidavit[s] of Truth" that cited the Fair Debt Collection Practices Act ("FDCPA"). (*Id.* at 13-14, 18-22, 27-39.) Plaintiff alleged that the loan contract should be "null and void," because finance charges "can only be paid when money is in hand and or money [is] direct deposited into a consumer's bank account,"' and that Truist Bank "leveraged" his "name, merit, and social security number" on the promissory note. (*Id.* at 19.) Plaintiff sought to void the contract and to have the lien removed from the vehicle. (*Id.* at 19.)

In the January 23, 2024 order, the Court found that because Plaintiff did not plead any facts in the complaint describing any conduct on the part of Defendant, he had failed to comply with the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure, which requires

---

[2] Plaintiff filed another complaint naming a different defendant that appears related to this one. *See Broughton v. VW Credit*, ECF 1:23-CV-4664, 8 (S.D.N.Y. May 6, 2024) (dismissing amended complaint for failure to state a claim on which relief may be granted).

a short and plain statement giving a defendant fair notice of a plaintiff's claims and the grounds

on which they rest. In fact, although the attachments to the complaint suggested that Plaintiff was

attempting to bring claims arising out of a disputed auto loan, he had provided so few facts that

the Court could not discern the nature of the claims he was attempting to assert. Because Plaintiff

had not stated a viable legal claim, the Court dismissed the complaint for failure to state a claim

on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). The Court, however, granted

Plaintiff leave to replead his claims in an amended complaint, noting that, if he was attempting to

assert a claim under the FDCPA, he must allege facts in the amended complaint indicating that

the disputed debt arises from a consumer transaction as defined by the FDCPA, and that

Defendant is a debt collector within the meaning of the statute, who engaged in acts prohibited

by the statute.[3]

In the amended complaint, Plaintiff asserts a breach of contract claim and alleges that

Truist Bank violated "UCC Codes," "HJR 192," "Public Law 73-10," the "Federal Reserve Act,"

"Federal Banking Laws," and the "Security Exchange Commission Regulations." (ECF 6, at 3.)

Plaintiff alleges that he entered a contract with Truist Bank for the purchase of a vehicle, but that

the contract became "null and void" because of Truist Bank's "failure to disclose to [him] the

---

[3] In the January 23, 2024 order, the Court instructed Plaintiff that the FDCPA applies to consumer debt "arising out of . . . transaction[s] . . . primarily for personal, family, or household purposes." 15 U.S.C. § 1692a(5); *Polanco v. NCO Portfolio Mgmt., Inc.*, 930 F. Supp. 2d 547, 551 (S.D.N.Y. 2013) ("[T]he FDCPA is triggered when the obligation is a debt arising out of a consumer transaction."). The FDCPA prohibits those who qualify as "debt collectors" from using deceptive and misleading practices, 15 U.S.C. § 1692e, or engaging in "conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. The FDCPA defines a debt collector as: (1) a person whose principal purpose is to collect debts; (2) a person who regularly collects debts owed to another; or (3) a person who collects its own debts, using a name other than its own as if it were a debt collector. 15 U.S.C. § 1692a(6).

option of claiming 80% (eighty percent) of the security interest of the car note pursuant to the Security Exchange Regulations." (*Id*. at 2, 4.)

Attached to the amended complaint are 20 pages of documents, which include the retail installment contract between Plaintiff and Pepmore, tax forms, a "U.C.C. Financing Statement" (*Id.* at 7-19, 22-27), and a "notice" written by Plaintiff stating that Truist Bank has

> been misleading, engaging in malpractice, use & abuse of the fact debt practices and violating my rights pursuant to 15 U.S.C 1692. TRUIST BANK threatened to repossess my property unless I make over payments on top of positive credits on my statements which were in fact obtained from my CESTA QUE VIE TRUST.

(*Id.* at 21.)

Plaintiff seeks the following relief: (1) "set off all first and secondary accounts to zero (0) balance as per the Equitable Owner Beneficiary, Power Of Attorney has instructed, pursuant to the BILL OF EXCHANGE and the UCC Codes"; (2) "Discharge all debt pursuant to UCC § 3-311, UCC 3-603 and HJR 192"; (3) "Free and Clear Title of subject property"; and (4) "Defendant is liable to Plaintiff/Equitable Owner the amount of $300,000 for the amount of the lien placed on the vehicle as the first legit lien holder documented with the NY Department Of State (UCC 1 Financial Statement)." (*Id.* at 4.)

## DISCUSSION

### A.    Federal Claims

Plaintiff makes it clear in the amended complaint that he seeks free and clear title to the vehicle and discharge of his debt, along with money damages for alleged financial injury that Defendants caused him to suffer. Plaintiff premises his federal claims on Defendants' alleged

violations of "HJR 192," "Public Law 73-10," the "Federal Reserve Act," "Federal Banking Laws," and the "Security Exchange Commission Regulations."[4] (ECF 6, at 3.)

The Court first considers Plaintiff's assertion that Defendants violated HJR 192, which refers to House Joint Resolution 192 of 1933, enacted by Pub. L. No. 73–10, 48 Stat. 112–13 (1933). The statutory provision was adopted by Congress to prohibit contracts that demand payment in gold; the resolution suspended the gold standard in the United States.[5] *See* H.J.R. 192, 73d Cong. (1933). Plaintiff's citation to HJR 192 is seemingly a reference to "vapor money," "unlawful money" or "redemption" theories which are based on the premise that "because the United States went off the gold standard in 1933 with the passage of HJR-192, 'the United States has been bankrupt and lenders have been creating unenforceable debts because they are lending credit rather than legal tender.'" *Green v. Pryce*, No. 15-CV-3527, 2015 WL 4069176 at *2 (E.D.N.Y. July 1, 2015) (citation omitted) (collecting cases). These theories are commonly used in efforts to avoid legitimate debts and courts have largely rejected relief based on HJR 192. *See McLaughlin v. CitiMortgage, Inc.,* 726 F. Supp. 2d 201, 214 (D. Conn. 2010) (collecting cases). Because Plaintiff does not allege any facts suggesting that HJR 192 applies to Defendant's alleged acts or omissions, his claims under HJR 192 must be dismissed for failure to state a claim. 28 U.S.C. § 1915(e)(2)(B)(ii).

Plaintiff also asserts unspecified claims under the Federal Reserve Act, Federal Banking Laws, and the Security Exchange Commission Regulations. Because Plaintiff does not allege any

---

[4] While some of Plaintiff's attachments to the amended complaint refer to the FDCPA, he alleges no facts suggesting that he is bringing a claim under the statute, and he does not allege facts that support an FDCPA claim.

[5] "To assure uniform value to the coins and currencies of the United States," HJR 192 states that obligations requiring payment "in gold or a particular kind of coin or currency, or in an amount in money of the United States measured thereby" are against public policy, and that U.S. currency is legal tender for all debts. *See* H.J.R. Res. 192, 73d Cong. (1933).

facts indicating how these statutes are applicable to his claims, the Court finds that he has failed

to state claims under these laws on which relief may be granted. *See* 28 U.S.C.

§ 1915(e)(2)(B)(ii).

**B.      State Law Claims**

Plaintiff asserts state law claims against Defendants, including breach of contract and

violation of the Uniform Commercial Code ("UCC").[6] A district court, however, may decline to

exercise supplemental jurisdiction of state law claims when it "has dismissed all claims over

which it has original jurisdiction."[7] 28 U.S.C. § 1367(c)(3). Generally, "when the federal-law

claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the

federal court should decline the exercise of jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484

U.S. 343, 350 n.7 (1988). Having dismissed the federal claims of which the Court has original

jurisdiction, the Court declines to exercise its supplemental jurisdiction of any state law claims

Plaintiff may be asserting. *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d

Cir. 2006) ("Subsection (c) of § 1367 'confirms the discretionary nature of supplemental

---

[6] Plaintiff refers to the UCC as if it is a federal law. The UCC, however, is not a federal law but rather a set of model laws governing commercial transactions in the United States that have been adopted separately by the states. *See Kemp v. United States*, 124 Fed. Cl. 387, 393 (2015); *Moss v. Stanley*, No. 8:20-CV-3194, 2020 WL 6111002, at *2 (D.S.C. October 16, 2020).

[7] Plaintiff does not allege facts suggesting that his state law claims fall under the Court's diversity of citizenship jurisdiction. To establish diversity jurisdiction under 28 U.S.C. § 1332, a plaintiff must first allege that the plaintiff and the defendant are citizens of different states. *Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 388 (1998). In addition, the plaintiff must allege to a "reasonable probability" that the claim is in excess of the sum or value of $75,000.00, the statutory jurisdictional amount. *See* 28 U.S.C. § 1332(a); *Colavito v. N.Y. Organ Donor Network, Inc.*, 438 F.3d 214, 221 (2d Cir. 2006) (citation and internal quotation marks omitted). Here, Plaintiff fails to allege facts demonstrating diversity of citizenship, or that the amount in controversy is met. In any event, Plaintiff does not provide facts suggesting that he can assert a breach of contract claim, or any other claim arising under state law.

jurisdiction by enumerating the circumstances in which district courts can refuse its exercise.'" (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997))).

## C.    Leave to Amend Denied

District courts generally grant a *pro se* plaintiff leave to amend a complaint to cure its defects, but leave to amend may be denied if the plaintiff has already been given an opportunity to amend but has failed to cure the complaint's deficiencies. *See Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Because Plaintiff's amended complaint does not suggest that he could bring viable claims with further amendment, the Court declines to grant Plaintiff another opportunity to amend.

## CONCLUSION

The Court dismisses this action for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). The Court declines to exercise its supplemental jurisdiction of any state law claims Plaintiff may be asserting.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Clerk of Court is directed to enter judgment in this action.

SO ORDERED.

Dated:    June 27, 2024
          New York, New York

          /s/ Laura Taylor Swain
          LAURA TAYLOR SWAIN
          Chief United States District Judge